UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENNETH MERLE HAMMICK, II, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 20-CV-0622-CVE-CDL |
| | ) |
| CHRISTE QUICK, Warden,[1] | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

Petitioner Kenneth Merle Hammick, II, a state prisoner appearing pro se,[2] brings this action pursuant to 28 U.S.C. § 2254, seeking federal habeas relief from the judgment entered against him in the District Court of Rogers County, Case No. CF-2015-327. Dkt. # 1. Respondent Christe Quick has filed a response (Dkt. # 8) in opposition to the petition, as well as the state-court record (Dkts. # 9, 10), and Hammick has submitted a reply (Dkt. # 11). Having considered the parties' arguments and the relevant record, the Court denies the petition.

I.   BACKGROUND

Hammick was convicted by a jury in 2017 of robbery with a dangerous weapon, in violation of OKLA. STAT. tit. 21, § 801 (Count 1), burglary in the first degree, in violation of OKLA. STAT.

---

[1] Hammick presently is incarcerated at the Oklahoma State Penitentiary, in McAlester, Oklahoma. The Court therefore substitutes the Oklahoma State Penitentiary's current warden, Christe Quick, in the place of Scott Crow, as party respondent. See Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts.

[2] Because Hammick appears without counsel, the Court must liberally construe his pleadings. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court, however, is neither required nor permitted to assume the role of Hammick's advocate by constructing legal arguments on his behalf or scouring the record for facts to support his claims. Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005).

tit. 21, § 1431 (Count 2), and larceny of an automobile, in violation of OKLA. STAT. tit. 21, § 1720 (Count 3). Dkt. # 9-7, at 1; Dkt. # 9-8, at 1-2, 21.[3] He received terms of imprisonment of thirty-eight years for Count 1, twenty years for Count 2, and nine years for Count 3, with all terms to be served concurrently. Dkt. # 9-8, at 3, 21. Hammick directly appealed his judgment and sentence to the Oklahoma Court of Criminal Appeals (OCCA), arguing that "the trial court erred when it refused to suppress [his] statements to law enforcement," that "[his] conviction was based upon an impermissibly suggestive identification procedure," and that "the trial court erred in admitting evidence of burglary of a firearm from a vehicle as res gestae of the robbery, burglary, and larceny of an automobile." Dkt. # 8-2, at 2.

The OCCA denied relief on September 12, 2019. Dkt. # 8-1. In its opinion, the OCCA provided the following recitation of facts, which the Court "presume[s] to be correct" absent clear and convincing evidence rebutting the presumption. 28 U.S.C § 2254(e)(1).

> The evidence showed Hammick broke into a Claremore, Oklahoma home on May 10, 2015, and robbed its three occupants at gunpoint. He fled the scene by stealing the car of one of the victims. Two of the three victims identified Hammick as the perpetrator from a six-person photographic lineup within days after the crime. Knowing police would be on the lookout for the stolen car, Hammick abandoned it soon after the robbery. He attempted, without success, to steal another car, but nevertheless took a nine millimeter pistol from that car's console. The next day, a Claremore police officer responded to a trespassing call involving a suspicious man hiding in some bushes; he discovered Hammick there. After his arrest, Hammick denied any involvement in the home invasion robbery during his initial interview. He later expressed a desire for counsel. When investigators subsequently executed a search warrant for a DNA sample, it was Hammick who initiated conversation with them and ultimately made several incriminating statements. A month after that interview, he asked to speak to investigators again and this time made a full

---

[3] The Court's citations refer to the CM/ECF header pagination.

> confession. He directed investigators to the gun he had pilfered and attempted, without success, to direct them to the clothing he was wearing during the robbery.

Id. at 2-3. Hammick now seeks federal habeas relief under 28 U.S.C. § 2254, raising the three claims he presented to the OCCA on direct appeal. Dkt. # 1, at 5-9.

II.   LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted). When a claim has been "adjudicated on the merits in State court proceedings," federal habeas relief may be granted under the AEDPA only if the state-court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

Clearly established federal law "refers to the holdings, as opposed to the dicta, of the [Supreme] Court's decisions as of the time of the relevant state-court decision." Dodd v. Trammell, 753 F.3d 971, 982 (10th Cir. 2013) (alteration and internal quotation marks omitted). A state-court decision is "contrary to" clearly established federal law if the conclusion reached by the state court is "opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." Id. (alterations and internal quotation marks omitted). A state-court decision is an "unreasonable application" of clearly established federal law if the "state court identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. (alteration and internal quotation marks omitted). "[A]n

3

*unreasonable* application of federal law is different from an *incorrect* application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Renico, 559 U.S. at 773 (emphases in original) (citations and internal quotation marks omitted).

    III.    DISCUSSION

        A.  Ground One:  Admission of Self-Incriminating Statements

Hammick first contends that his self-incriminating statements to law enforcement were inadmissible under the Fifth Amendment because he did not knowingly and voluntarily waive his right to the presence of counsel. Dkt. # 1, at 5. In Miranda v. Arizona, 384 U.S. 436 (1966), the United States Supreme Court "declared that an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation." Edwards v. Arizona, 451 U.S. 477, 482 (1981). "[A]fter the right to counsel ha[s] been asserted by an accused, further interrogation of the accused should not take place 'unless the accused himself initiates further communication, exchanges, or conversations with the police.'" Oregon v. Bradshaw, 462 U.S. 1039, 1044 (1983) (quoting Edwards, 451 U.S. at 485). Not only must the accused initiate the conversations, but his waiver of counsel must be voluntary and "constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." Edwards, 451 U.S. at 482 (citation and internal quotation marks omitted); see Bradshaw, 462 U.S. at 1044-45.

Hammick asserts that he requested an attorney before making inculpatory statements to investigators on May 18, 2015, and confessing his guilt on June 9, 2015. Dkt. #1, at 5; Dkt. # 8-

4

2, at 15. Hammick contends that he was "deeply disturbed at the time due to [his] mental health and drug use," that he was "not in [his] right state of mind," and that "the officers used [his] disability and confusion to deceive [him] into a confession that was false." Dkt. #1, at 5. Respondent contends that, while Hammick exhausted on direct appeal the general claim that he did not knowingly and voluntarily waive his right to the presence of counsel during interrogation, the arguments Hammick now raises regarding his drug use and mental health are unexhausted and subject to an anticipatory procedural bar. Dkt. # 8, at 8-13.

### i. Hammick's Unexhausted Arguments

Exhaustion requires that "a federal habeas petitioner . . . provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." Anderson v. Harless, 459 U.S. 4, 6 (1982); see Fairchild v. Workman, 579 F.3d 1134, 1149 (10th Cir. 2009) ("A claim is more than a mere theory on which a court could grant relief; a claim must have a factual basis, and an adjudication of that claim requires an evaluation of that factual basis." (citation and internal quotation marks omitted)). A petitioner can neither "assert entirely different arguments . . . from those raised before the state court," nor "'shift' the 'basis for [his or her] argument' away from what was previously raised in state court." Grant v. Royal, 886 F.3d 874, 891 (10th Cir. 2018) (first quoting Bland v. Sirmons, 459 F.3d 999, 1011 (10th Cir. 2006), then quoting Gardner v. Galetka, 568 F.3d 862, 872 (10th Cir. 2009)). Further, "the assertion of a general claim before the state court is insufficient to exhaust a more specific claim asserted for habeas relief." Id.

On direct appeal, Hammick's claim of involuntary waiver was premised on the argument that he believed a confession might result in "some kind of deal with the police." Dkt. 8-2, at 18; see Dkt. 8-1, at 6 ("Hammick asserts his confession was induced by his understanding that

5

cooperation would result in less jail time."). Hammick made no reference to his drug use or his mental health in support of his claim before the OCCA, declaring to the contrary that investigators found him "coherent," "sober," and "making sense" during the two police interactions at issue. Dkt. # 8-2, at 16. "[A] petitioner cannot assert entirely different arguments [in his or her request for federal habeas relief] from those raised before the state court." Bland, 459 F.3d at 1011. Because an involuntary waiver claim premised on drug use and mental health is not the "substantial equivalent" of an involuntary waiver claim premised on the belief that a confession would produce a more favorable outcome, presentation of the latter argument in state court cannot serve to exhaust the former. Grant, 886 F.3d at 891.

Respondent further argues that the unexhausted claim is subject to an anticipatory procedural bar. Dkt. # 8, at 11-13. "'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." Moore v. Schoeman, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002). To "serve as the basis for an anticipatory procedural bar," a state procedural rule must be "both independent of federal law and adequate to support the judgment—that is, 'strictly or regularly followed and applied evenhandedly to all similar claims.'" Fontenot v. Crow, 4 F.4th 982, 1023 (10th Cir. 2021) (quoting Smallwood v. Gibson, 191 F.3d 1257, 1268 (10th Cir. 1999)). If the state procedural rule is both independent and adequate, the Court is barred from reviewing the claim unless (1) "the prisoner has alleged sufficient 'cause' for failing to raise the claim [in state court] and resulting 'prejudice'" or (2) "denying review would result in a fundamental miscarriage of justice because the petitioner has made a 'credible' showing of actual innocence." Frost v. Pryor, 749 F.3d 1212, 1231 (10th Cir. 2014). Where, as here, the state has pleaded the affirmative defense of a state procedural bar, "the burden to place that defense in issue shifts to the

petitioner." Hooks v. Ward, 184 F.3d 1206, 1217 (10th Cir. 1999). "This must be done, at a minimum, by specific allegations by the petitioner as to the inadequacy of the state procedure." Id.

Respondent contends that Hammick's unexhausted claim would be procedurally barred under Oklahoma's Uniform Post-Conviction Procedure Act, OKLA. STAT. tit. 22, §§ 1080-89, which precludes defendants from raising in an application for post-conviction relief any claim that could have been raised on direct appeal. See Fontenot, 4 F.4th at 1023. Hammick does not challenge the independence or adequacy of this rule, and courts have repeatedly found that the rule meets both standards. See Sherrill v. Hargett, 184 F.3d 1172, 1175 (10th Cir. 1999) ("Oklahoma's procedural rule barring post-conviction relief for claims petitioner could have raised on direct appeal constitutes an independent and adequate ground barring review of petitioner's . . . claim."); McCracken v. Gibson, 268 F.3d 970, 976 (10th Cir. 2001). Nor has Hammick alleged cause and prejudice excusing his failure to raise the claim in state court or a fundamental miscarriage of justice necessitating this Court's review. See Grant, 886 F.3d at 901-02 & n.9 (applying anticipatory procedural bar where petitioner "[made] no arguments relating to the adequacy of Oklahoma's procedural default rule, much less mount[ed] a challenge to the propriety of applying it here").

For these reasons, the Court determines that it is barred from considering Hammick's new arguments that his waiver of counsel was unknowing and involuntary based on his drug use and mental health. The Court therefore turns to the involuntary waiver claim as Hammick fairly presented it to the OCCA.

### ii. Involuntary Waiver of the Right to Counsel

Hammick claims that police obtained his confession and other inculpatory statements in

7

violation of his Fifth Amendment right to have an attorney present during questioning because his waiver of that right was not voluntary, knowing, and intelligent. Dkt. # 1, at 5; Dkt. # 8-2, at 13-19. Hammick argues that his decision to waive his right to the presence of counsel, despite his previous invocation of the right, "came only after he had the adequate information to make a believable confession in an effort to strike up some kind of deal with the police." Dkt. # 8-2, at 18. Hammick claims he "was desperate to get out of the situation, and believed he could use his knowledge of other criminal activity and a confession to receive a more favorable outcome." Id.

The OCCA rejected Hammick's claim on the merits:

> Hammick contends the district court's refusal to suppress his inculpatory statements from his latter two police interrogations was error because he had invoked his right to counsel. He contends his inculpatory statements to police "were not given after a knowing and voluntary waiver of his right to an attorney."
> . . . .
>
> The district court held a Jackson v. Denno hearing to consider the admissibility of Hammick's confessions. Under Jackson-Denno, the district court must decide: 1) whether relinquishment of Fifth Amendment rights was voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception; and 2) whether the waiver was made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Runnels v. State, 2018 OK CR 27, ¶ 42, 426 P.3d 614, 624. Once a suspect invokes his Fifth Amendment rights, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Taylor v. State, 2018 OK CR 6, ¶ 10, 419 P.3d 265, 269 (quoting Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). See also Underwood v. State, 2011 OK CR 12, ¶ 33, 252 P.3d 221, 238-39: (holding defendant's statements were voluntary, despite prior request for counsel, because he initiated conversation with law enforcement).
>
> The district court found Hammick's inculpatory statements were not obtained in violation of his right to counsel because he initiated the conversations with investigators on both occasions and knowingly waived his right to counsel each time. A suspect may make a clear invocation of the right to counsel when interrogation is initiated or he may waive the right provided he does so voluntarily, knowingly, and intelligently. See Montejo v. Louisiana, 556 U.S. 778, 786, 129 S.Ct. 2079, 2085, 173 L.Ed.2d 955 (2009). When a suspect, after invoking his right to counsel, chooses to speak with police without counsel present, the burden is on

8

>the State to show the suspect's change of mind was "voluntary and intelligent." Underwood, 2011 OK CR 12, ¶ 31, 252 P.3d at 238. Whether a suspect's statements to police were voluntary depends on an evaluation of all surrounding circumstances, including the characteristics of the accused and the details of the interrogation. Id. at ¶ 33, 252 P.3d at 238.
>
>Hammick asserts his confession was induced by his understanding that cooperation would result in less jail time. Hammick's allegation of coercion is without merit. Both investigators testified they made no threats and offered no specific inducements to get Hammick to talk. Hammick was oriented in time and place and appeared capable of understanding his circumstances and rights. The investigators honored Hammick's request not to be interrogated in the absence of counsel until he reinitiated conversation with them. All three interviews were recorded and there was no evidence of coercion or specific inducements made by investigators in this case. Based on this record, we find no error in the admission of Hammick's inculpatory statements. This claim is denied.

Dkt. # 8-1, at 3-6 (footnotes omitted).

Hammick has not demonstrated that the OCCA's decision was contrary to, or an unreasonable application of, clearly established federal law or that it was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). The OCCA applied the correct legal principles in its adjudication of Hammick's Fifth Amendment claim and reasonably applied the law to the facts. The evidence presented at trial reflects that police initially read Hammick his Miranda rights on May 11, 2015, at which time Hammick denied involvement in the crimes. Dkt. # 9-4, at 59-64. The parties do not dispute that, at some point between May 11, 2015, and May 18, 2015, Hammick sent a note to investigators requesting counsel. Dkt. # 8, at 14; Dkt. # 9-2, at 44; Dkt. 9-4, at 69. At trial, Investigator John Singer testified that he returned to the jail on May 18, 2015, to execute a search warrant to obtain a buccal swab from Hammick. Dkt. # 9-4, at 65-66. Singer testified that Hammick engaged him in conversation and that, when Hammick began to speak regarding the crimes, Singer again read Hammick his Miranda rights and verified that Hammick wanted to talk despite his previous request for an attorney. Id. at 69-70.

Singer testified that on June 9, 2015, he received word from his lieutenant that Hammick

wished to speak to him. Id. at 70. When Singer arrived at the jail, he read Hammick his Miranda rights a third time, and Hammick confessed to the crimes. Id. at 70-71. Singer noted that Hammick "was a whole lot healthier" and that Hammick stated he "had found the Lord while in jail" and "needed to be honest and get some stuff off of his chest that he had lied about." Id.

Hammick does not persuasively dispute that he initiated the conversations regarding the crimes on May 18, 2015, and June 9, 2015. See Dkt. # 8-2, at 16 (discussing Hammick's conversations with investigators). Compare Dkt. # 11, at 1 (stating, in reply brief, that "any further contact with him was initiated by the police and anything he did say after this was a violation of his Fifth Amendment rights to self incrimination") with id. at 2 (suggesting the crux of his complaint is that "there was no waiver signed by Petitioner, or a written statement made that he waived his right to counsel to be present," and reasserting unexhausted argument that "[t]here was no review of his mental state made by mental health provider"). Nor does he point to any evidence suggesting investigators offered promises or created improperly coercive conditions to induce his confession. The evidence reflects that investigators read Hammick his Miranda rights in each interaction and that Hammick was capable of understanding both the nature of those rights and the consequences of abandoning them. The totality of the circumstances clearly demonstrates that Hammick's waivers of his right to counsel on May 18, 2015, and June 9, 2015, were knowing and voluntary. Habeas relief on this claim is therefore unwarranted under § 2254(d).

B.  Ground Two:  Unfairly Suggestive Identification Procedure

Hammick next asserts that his due process rights were violated by an unduly suggestive photographic identification procedure. Dkt. # 1, at 7. A photo array identification procedure may constitute a due process violation if the photo array is "so unnecessarily suggestive that it is 'conducive to irreparable mistaken identification.'" United States v. Worku, 800 F.3d 1195, 1203

(10th Cir. 2015) (quoting Grubbs v. Hannigan, 982 F.2d 1483, 1489-90 (10th Cir. 1993)). Determining whether a violation occurred involves a two-step inquiry. First, the Court considers whether "the photo array [was] impermissibly suggestive," which requires consideration of the number of photographs, the details of the photographs, and the manner of presentation by the officers. Id. If the Court determines that the photo array was impermissibly suggestive, it then considers whether the identification was nonetheless "reliable under the totality of the circumstances." Id. This second inquiry requires consideration of five factors: the "witnesses' opportunity to view the suspect when the wrongful action was committed," the "witnesses' degree of attention," the "accuracy of witnesses' prior description of the suspect," the "level of certainty demonstrated by the witnesses," and the "length of time between the wrongful action and the photo array." Id. at 1205; see Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

Hammick contends that the photo array identification procedure, which included six photographs, was impermissibly suggestive because he was the only individual with a neck tattoo, his photograph was positioned first in the line-up, and his photograph was taken outdoors while the other five had similar indoor backgrounds. Dkt. # 8-2, at 22-23. The OCCA denied Hammick's claim on direct appeal:

> Hammick presumes for purposes of this claim that we will agree his confessions were erroneously admitted. He then argues that the photo lineup procedure was impermissibly suggestive and violated his right to due process. Without the identification evidence and his confessions, he maintains the evidence was insufficient to support his convictions. According to Hammick, the fact that he was the only suspect with a neck tattoo, that his photo was placed in the first position, and that his photo was the only one taken outdoors increased the likelihood of misidentification and affected the overall reliability of the victims' identification.
> . . .
>
> Hammick's claim—that the lineup was impermissibly suggestive because he was the only suspect with a neck tattoo—requires no relief. In Leigh v. State, 1985 OK CR 41, ¶ 6, 698 P.2d 936, 938, this Court held that the challenged lineup procedure was impermissibly suggestive because the accused was the only man included

11

without facial hair.  Although the lineup fell short of established requirements, we held the identification was nevertheless admissible because the witnesses' identification testimony was independently reliable.  Id. at ¶¶ 7-10, 698 P.2d at 938 (finding testimony identifying the defendant as the gunman properly received, despite corrupting influence of suggestive photo array).  Factors to consider in deciding whether an in-court identification is independently reliable and not the result of a suggestive pretrial identification are: 1) the opportunity to view the suspect at the time of the crime; 2) the witness' degree of attention; 3) accuracy of the witness' prior description; 4) level of certainty demonstrated by the witness; and 5) the length of time between crime and confrontation.  Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382, 34 L.Ed.2d. 401 (1972).

The victims' testimony in this case was independently reliable as in Leigh.  Both victims testified they got a good look at the robber.  One paid particularly close attention to the robber's face in an effort to recall where he had previously seen Hammick.  He also described Hammick's clothing.  His description was corroborated by the other victim who gave the same general description.  Her description was even more detailed because she identified the brand of Hammick's athletic shoes, which the investigator said matched the tread pattern of the muddy footprints on the seat and driver-side door of the car stolen by the robber.  Both victims were certain in their identifications days after the crime and the record shows neither victim identified Hammick based solely on his neck tattoo.  The fact that only two of the three victims identified Hammick in the lineup likewise weakens his claim that the lineup was unfairly suggestive.  His photo did not obviously stand out or point to him as the culprit.  Having reviewed the factors enumerated above, we find the factors weigh in favor of finding the victims' in-court identifications were independently reliable and admissible.

Next, Hammick contends because his photo was placed in the first position that the lineup was impermissible suggestive.  The record does not establish the order the photographs were displayed and shows only that the investigator placed Hammick's photo "among" five others.  None of the victims mentioned the order in which the photos were displayed during the lineup.  Even if Hammick's photo was in the first position, he cites no authority holding that a suspect's photo cannot be in the first position out of concerns of suggestiveness.  This contention is without merit.

Finally, Hammick contends that because his photo was the only one taken outdoors that the lineup was impermissibly suggestive.  The record belies his claim.  Although the subjects in the lineups shown to the victims were not identical, two photos included in each lineup were also taken outdoors. (State's Exhibits 13-14). Accordingly, the background of Hammick's photo did not make it unfairly stand out.

This Court requires only that suspects in lineups possess the same general physical characteristics as the accused and that substantial compliance with physical

12

>  similarity guidelines suffices to protect due process. Peters v. State, 1986 OK CR 138, ¶ 11, 725 P.2d 1276, 1278.  Every photo in the lineup was of a thin, white male with dark hair wearing similar clothing. The challenged lineup was not so unfairly suggestive because of Hammick's visible neck tattoo that it gave rise to a likelihood of irreparable misidentification.  The identifications by the two victims were independently reliable.  Both had an opportunity to see Hammick during the commission of his crimes, paid close attention to his appearance and features, and were certain in their identifications of him when shown the lineup and in the courtroom.  Hammick has failed to establish the commission of any error, plain or otherwise, that affected the outcome of his trial.  This claim is denied. Hogan, 2006 OK CR 19, ¶ 38, 139 P.3d at 923.

Dkt. # 8-1, at 6-11.

The OCCA applied the correct legal principles in its adjudication of Hammick's due process claim, and the Court concludes that its application of the law and its determination of the facts were reasonable under § 2254(d).  As noted by the OCCA, Hammick is incorrect in his assertion that his was the only photograph taken outdoors.  See Dkt. # 9-5, at 23, 25, 31, 35, 41. Even assuming Hammick's photograph was placed first among the line-up, Hammick cites no authority and offers no argument supporting his contention that this positioning is unduly suggestive.  See United States v. Carter, 410 F.3d 942, 948-49 (7th Cir. 2005) ("We . . . have no reason to believe that any one of the six photo positions is more prominent than the other five . . . . [I]f the bottom-center position is an inherently pronounced position as [the defendant] argues, then every photo array with a suspect pictured in the bottom-center position could be held unduly suggestive.  We see no basis for such a rule."); United States v. Anderson, 156 F. App'x 218, 220-21 (11th Cir. 2005)[4] ("Anderson's picture is in the top, left-hand corner, but . . . Anderson fails to explain why this particular positioning was 'prominent.'").

The OCCA's finding regarding Hammick's neck tattoo was likewise reasonable under §

---

[4] The Court finds the reasoning in this unpublished opinion persuasive and cites it for that reason.  FED. R. APP. P. 32.1(a); 10th Cir. R. 32.1(A).

2254(d). Hammick argues, "While both Hicks and Cox testified to what the man was wearing, they were not able to identify anything distinguishing about his person besides the presence of a neck tattoo. Appellant was not found in the clothes described by Hick[s] and Cox and they were never recovered by police." Dkt. # 8-2, at 25 (record citation omitted). Both victims, however, provided detailed descriptions of Hammick. Amaia Hicks testified that she "got a good notice" of Hammick at the time of the robbery, including his neck tattoo, what he had on, and his hair. Dkt. # 9-3, at 44. She described Hammick's facial hair and noted that he was not well groomed. Id. at 45. She testified that Hammick was "really skinny" and about 5 feet, 7 inches tall. Id. at 45-46. Larry Cox likewise testified that he was able to see Hammick's face and neck tattoo during the robbery. Id. at 103. Cox noted that Hammick was wearing white tennis shoes, a navy blue or dark black hoodie, and "plaid blue and striped pajama pants." Id. at 104. Cox testified that he recognized Hammick's face as someone who had been in his apartment a week before the robbery. Id. at 109, 114, 118. He further testified that he saw and chased Hammick the day after the robbery. Id. at 110-11, 114.

      The OCCA properly considered the appropriate five factors to determine that the victims' identifications of Hammick were independently reliable under the totality of the circumstances. The evidence reflects that both victims had considerable "opportunity to view the suspect when the wrongful action was committed," that each paid considerable attention to Hammick's person during the robbery, and that each demonstrated certainty in the identification. Worku, 800 F.3d at 1205. The witnesses' descriptions of Hammick appear accurate, and "the length of time between the wrongful action and the photo array" was minimal. Id. Cox identified Hammick in the photo array only one day after the May 10, 2015, robbery, and Hicks identified Hammick in the photo array the following day. Dkt. # 9-5, at 23, 35; Dkt. # 9-3, at 65; Dkt. # 9-4, at 51.

The Court therefore concludes that the OCCA's determination was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d).

### C. Ground Three: Admission of Firearm as Res Gestae Evidence

In his third claim for relief, Hammick contends that his trial was rendered fundamentally unfair by the admission into evidence of a pistol Hammick claims was unrelated to the charged crimes. Dkt. # 1, at 8. At trial, the jury heard evidence that Hammick fled the scene of the robbery in the vehicle of one of the robbery victims and later abandoned it about 3,000 feet from the home. Dkt. # 9-3, at 55, 101; Dkt. # 9-4, at 40-41. Hammick then fled on foot another 2,000 feet, where he broke into another car and stole the pistol at issue from the console. Dkt. # 9-4, at 45. In his June 9, 2015, confession, Hammick admitted to stealing the pistol after fleeing the scene of the robbery. Dkt. # 9-4, at 71-72. He attempted to direct investigators to the pistol and to property items taken during the robbery, and police uncovered the pistol in the location Hammick provided. Id. at 73-75.

At trial, the State sought to admit the pistol as evidence of Hammick's location "in a string of acts which connects him to the robbery" and as "corroboration of the statements that [Hammick] [made] to the police on June the 9th of 2015." Dkt. # 9-3, at 153. Hammick's counsel objected on the bases that the pistol was unrelated to the charged crimes and overly prejudicial. Id. at 152-54. The state trial court allowed the pistol into evidence, finding that it was "part of a continuation of a series of events which . . . makes it part of the res gestae," and that the probative value outweighed the prejudicial effect. Id. at 154.

Hammick challenged the admission of the pistol on direct appeal, and the OCCA denied relief:

15

Hammick contends he was denied a fair trial from the admission of other crimes evidence. He contends the district court erred in admitting, under the res gestae exception, evidence of a pistol theft he committed the day after the charged crimes. He argues that exception does not apply because the charged acts and pistol theft were separated by time and location and were unconnected, i.e. he did not use the stolen pistol to perpetrate the charged acts. He also argues that the stolen pistol evidence was more prejudicial than probative.

The district court admitted the stolen pistol and photos of it, over objection, finding Hammick's theft of the pistol was part of a continuing series of related events. Witness testimony and argument concerning Hammick's theft of the pistol was admitted without objection. . . .

This Court has held that evidence is admissible under the res gestae exception when "a) it is so closely connected to the charged offense as to form part of the entire transaction; b) it is necessary to give the jury a complete understanding of the crime; or c) when it is central to the chain of events." Eizember v. State, 2007 OK CR 29, ¶ 77, 164 P.3d 208, 230. See also Neill v. State, 1994 OK CR 69, ¶ 36, 896 P.2d 537, 550-51 (stating that evidence of other crimes is admissible as res gestae where the evidence forms part of "an entire transaction" or where there is a "logical connection" with charged offenses).

The State introduced evidence related to the pistol theft because of its proximity to the robbery. Admission of the pistol evidence gave the jury a more complete understanding of the crime and the chain of events. Evidence of the pistol theft and recovery of the pistol corroborated Hammick's June 9th confession and tended to prove he committed the charged crimes. He directed investigators to the buried pistol's location which coincidentally was in the same place he had been arrested for public intoxication the day after the charged robbery.

Hammick's contention that the pistol evidence was more prejudicial than probative is also unpersuasive. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Harmon, 2011 OK CR 6, ¶ 48, 248 P.3d at 936-37; 12 O.S.2011, § 2403. The Court gives proposed evidence its maximum reasonable probative force and its minimum reasonable prejudicial value. Harmon, 2011 OK CR 6, ¶ 48, 248 P.3d at 937. As noted above the stolen pistol evidence corroborated Hammick's June 9th confession and we find its probative value was not substantially outweighed by the danger of unfair prejudice. 12 O.S.2011, § 2403.

Moreover, Hammick cannot show any prejudice from the admission of images or testimony about the stolen pistol because of the overwhelming evidence of his guilt, namely his confession and the victims' testimony. The district court instructed the jury not to consider the pistol evidence in deciding guilt, but only in reference to Hammick's motive, intent, preparation, common scheme or plan. We presume the jury followed that instruction. See Sanders v. State, 2015 OK CR 11, ¶ 15, 358

>P.3d 280, 285. Nor is there any evidence the jury inflated Hammick's sentence because of the pistol evidence. It recommended the minimum sentence on Counts 2 and 3 and a sentence well within the range of punishment on Count 1. Hammick has not shown any error, plain or otherwise. Accordingly, this claim is denied.

Dkt. # 8-1, at 11-14 (footnote omitted).

Because the admission of evidence in state court is a matter of state law, errors in admission ordinarily do not give rise to cognizable claims for federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 67 (1991). Habeas relief is available only when, "considered in light of the entire record," the admission of the evidence "resulted in a fundamentally unfair trial." Knighton v. Mullin, 293 F.3d 1165, 1171 (10th Cir. 2002) ("We will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies defendant due process of law." (alteration omitted) (quoting Duvall v. Reynolds, 139 F.3d 768, 787 (10th Cir. 1998))); see Mayes v. Gibson, 210 F.3d 1284, 1293 (10th Cir. 2000) ("Habeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results."). "Inquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner," and "[a]ny cautionary steps—such as instructions to the jury—offered by the court." Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002).

Even assuming United States Supreme Court holdings clearly establish that due process rights are violated by the admission of evidence resulting in a fundamentally unfair trial,[5]

---

[5] See Holland v. Allbaugh, 824 F.3d 1222, 1229 & n.2 (10th Cir. 2016) (assuming without deciding that the Supreme Court "clearly established a broad rule—that the introduction of evidence violates the Due Process Clause when it 'is so unduly prejudicial that it renders the trial fundamentally unfair'" but holding petitioner was "still not entitled to relief because the OCCA's decision was not an 'unreasonable application' of [that rule]").

Hammick has not shown entitlement to habeas relief. The OCCA considered both the prejudicial and probative weight of the evidence, as well as the strength of the other evidence against petitioner and the jury instruction limiting the jury's consideration of the pistol. Thus, Hammick has not shown that the OCCA's decision was contrary to clearly established federal law. Nor has he demonstrated that the OCCA unreasonably applied the law or unreasonably determined the facts in light of the evidence. 28 U.S.C. § 2254(d). The record is replete with evidence supporting Hammick's guilt, including his confession and the detailed identifications and testimony of the victims. The Court mitigated any potential prejudice to Hammick through its admonition to the jury that evidence of other offenses may not be considered as proof of guilt. Dkt. # 9-7, at 189. In view of this record, the admission of the pistol into evidence cannot be said to have so prejudiced Hammick as to infringe his right to a fundamentally fair trial.

Accordingly, the OCCA's determination as to the admission of res gestae evidence does not constitute an "extreme malfunction[] in the state criminal justice system[]," necessitating federal habeas relief. Harrington v. Richter, 562 U.S. 86, 102 (2011) (alterations added) (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

IV.     CONCLUSION

Based on the foregoing, the Court denies Hammick's petition for a writ of habeas corpus (Dkt. # 1). Further, because reasonable jurists would not debate this Court's assessment of Hammick's constitutional claims, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2) (providing that a certificate of appealability may issue "only if the [petitioner] has made a substantial showing of the denial of a constitutional right"); Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) ("A petitioner satisfies this standard by demonstrating that jurists of reason

could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.").

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. the Clerk of Court shall note on the record the substitution of Christe Quick in place of Scott Crow as party respondent;

2. the petition for writ of habeas corpus (Dkt. # 1) is **denied**;

3. a certificate of appealability is **denied**; and

4. a separate judgment shall be entered in this matter.

**DATED** this 24th day of October, 2023.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE